**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| THE UNITED STATES OF AMERICA, | ) | |
| and THE STATE OF ILLINOIS *ex rel*. | ) | |
| DR. THOMAS PROSE, | ) | |
| | ) | |
| Plaintiffs, | ) | Case No. 1:17-cv-06638 |
| | ) | |
| v. | ) | |
| | ) | |
| MOLINA HEALTHCARE OF ILLINOIS, | ) | |
| INC. and MOLINA HEALTHCARE, INC., | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANTS MOLINA HEALTHCARE OF ILLINOIS, INC.
AND MOLINA HEALTHCARE, INC.'S MEMORANDUM OF LAW
IN SUPPORT OF THEIR MOTION TO DISMISS**

**INTRODUCTION**

After terminating his company's contract with Molina Healthcare of Illinois, Inc. ("Molina") following a dispute with Molina over services and documentation, which resulted in arbitration, Dr. Thomas Prose ("Relator") now seeks to air his contractual grievances in this False Claims Act ("FCA") lawsuit against Molina and Molina Healthcare, Inc. ("Molina Healthcare"). Illinois and the federal government have declined to intervene in Relator's action.

First, Relator's claims fail for the simple reason that he has failed to allege a false claim made to the government. To the extent Relator relies on a theory of implied false certification to satisfy the false representation element of his FCA claim, he has not satisfied the additional requirements for pleading such a theory under *Universal Health Services, Inc. v. United States ex rel. Escobar*, 136 S. Ct. 1989 (2016). Moreover, Rule 9(b) requires the false statement or certification be alleged with particularity, which Relator fails to do, instead including vague

1

references to categories of reports and documents that courts have rejected. *See United States ex rel. Gross v. AIDS Res. All.-Chi.*, 415 F.3d 601, 604–05 (7th Cir. 2005).

Second, Relator fails to adequately allege materiality, causation, or scienter—three other essential elements of an FCA claim. The Complaint contains no factual allegations that would show that any false statement affected the government's payment or caused a loss to the government under the demanding standards that apply to materiality and causation based on false certifications. The Complaint is also devoid of any factual allegation regarding how Molina knowingly made a false statement or knew that any such statement was material to payment.

Third, the claims against Molina Healthcare should independently be dismissed because Relator has not alleged sufficient facts to suggest it knowingly caused false statements to be made or to support piercing the corporate veil. *See United States v. Ortho-McNeil Pharm., Inc.*, No. 03 C 8239, 2007 WL 2091185, at *5 (N.D. Ill. July 20, 2007) (Kendall, J.). The allegations that Molina Healthcare had access to documents and imposed a profit motive are not sufficient.

This Court should reject Relator's attempts to litigate his contract dispute as an FCA claim and dismiss the Complaint for failure to state a claim.

## BACKGROUND

Relator is the founder of General Medicine P.C., which provides certain services in skilled nursing facilities ("SNFist services").[1] Complaint ("Compl.") ¶¶ 22–24, ECF No. 1. He alleges that Molina contracted with General Medicine to satisfy Molina's obligation to provide SNFist services under Molina's contracts with the Illinois Department of Healthcare and Family Services ("Department"), which administers the Medicaid program on behalf of Illinois. *Id.* ¶¶ 31, 59–61.

---

[1] This background is drawn from the Complaint. Defendants accept facts alleged in the Complaint as true for purposes of this motion. *See Fox v. Am. Alt. Ins. Corp.*, 757 F.3d 680, 681 (7th Cir. 2014). Legal conclusions in the Complaint are not accepted as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

Molina allegedly stopped paying General Medicine after a dispute about provision and documentation of services, leading General Medicine to terminate its contract. *Id.* ¶¶ 31, 42–47. This contract dispute was the subject of an arbitration. *Id.* ¶¶ 31–32.

Relator alleges that, during the arbitration, his counsel deposed one former and two current Molina employees regarding whether Molina had replaced General Medicine's SNFist program, and those individuals testified that they believed Molina needed to provide SNFist services and had not yet replaced General Medicine. *Id.* ¶¶ 38–39, 48–49. Relator alleges that Molina's contracts with the Department required it to provide an SNFist program and notify the Department regarding changes in contracted providers. *Id.* ¶¶ 33–36.

Relator alleges that Molina should have reported that it was no longer providing SNFist services because neither the Department, nor the Centers for Medicare and Medicaid Services ("CMS"), which administers Medicaid nationally, would otherwise know. *Id.* ¶ 51. The government "did not require SNF-specific audit reports, and Molina was still completing FCNAs [face-to-face exams] and ACEs [annual comprehensive exams] for members who were not in skilled nursing facilities." *Id.* ¶ 52. However, Relator alleges that CMS asked about SNFist services during monthly conference calls but not that misrepresentations were made on the calls. *Id.* ¶ 54.

Relator does not point to any affirmative misrepresentation, allege that Molina submitted reports listing services it had not provided, or assert that any contract expressly conditioned payment on Molina's SNFist program. Instead, he identifies three types of reports containing allegedly false certifications: (1) "Encounter Data Reports" from Molina recording Medicaid-covered services, which "include an attestation from Molina that the data or documents are recorded and complete, accurate, and truthful, and in accordance with all federal and state laws,

3

regulations, policies, and contracts," *id.* ¶ 63; (2) quarterly reports the Department (not Molina) submitted to CMS including "a certification attesting that the reported data include only allowable expenditures in accordance with applicable federal, state, and local statutes, regulations, policies, and the state plan approved by CMS," *id.* ¶ 64; and (3) "fraud reports," which were allegedly false because Molina "failed to acknowledge its failure to provide a SNFist program." *Id.* ¶ 67.

Relator alleges that the Department had the authority to terminate the contract if Molina failed to carry out the contract's substantive terms. *Id.* ¶ 68. He does not, however, allege that CMS or the Department have complained or withheld payment from Molina—or any managed care organization ("MCO")—based on the lack of an SNFist program, that CMS or the Department have sought return of Medicaid funds in any circumstance analogous to Relator's allegations in this case, or that CMS or the Department have otherwise withheld funding from MCOs based on a lack of exact contract compliance. *See id.*

Although almost all of Relator's allegations are directed at Molina, he contends that Molina Healthcare is also liable. *Id.* ¶ 58. The sole substantive allegations against Molina Healthcare are that it required Molina to send it reports, including those provided to the Department and CMS, and that its "profit motive" caused Molina to eliminate the SNFist program. *Id.*

Relator brought claims under the federal and Illinois FCA. *Id.* ¶¶ 71–86. The federal claim is brought under subsections imposing liability on a defendant that (1) "knowingly presents, or causes to be presented, a false or fraudulent claim for payment," 31 U.S.C. § 3729(a)(1)(A); (2) "knowingly makes, uses, or causes to be made or used, false records or statements material to a false or fraudulent claim," *id.* § 3729(a)(1)(B); or (3) "knowingly makes, uses, or causes to be made or used, a false record or statement material to an obligation to pay or transmit money or property to the Government, or knowingly conceals or knowingly and improperly avoids or

4

decreases an obligation to pay or transmit money or property to the Government," *id.*
§ 3729(a)(1)(G). His Illinois FCA claim is based on the parallel provisions in that statute. Relator
filed the Complaint on September 14, 2017. The Complaint was sealed until November 19, 2018
to allow the United States and Illinois to intervene. Both have declined to intervene.

## LEGAL STANDARD

Under Federal Rules of Civil Procedure 8(a) and 12(b)(6), a complaint "must contain
sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"
*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). A plaintiff must plead sufficient
facts to show entitlement to relief instead of the "mere possibility of misconduct." *Id.* at 679.
Legal conclusions unsupported by sufficient factual allegations must be disregarded. *Id.* at 678.

Because the FCA is an anti-fraud statute, FCA allegations are subject to the heightened
pleading requirements of Federal Rule of Civil Procedure 9(b), which provides that "[i]n alleging
fraud or mistake, a party must state with particularity the circumstances constituting fraud or
mistake." Fed. R. Civ. P. 9(b); *see also Gross*, 415 F.3d at 604. To satisfy Rule 9(b), an FCA
complaint must allege "specific facts demonstrating what occurred at the individualized
transactional level for each defendant." *United States ex rel. Berkowitz v. Automation Aids, Inc.*,
896 F.3d 834, 841 (7th Cir. 2018). The complaint must include the "'who, what, when, where,
and how'" of the alleged fraud. *United States ex rel. Lusby v. Rolls-Royce Corp.*, 570 F.3d 849,
853–54 (7th Cir. 2009) (quoting *DiLeo v. Ernst & Young*, 901 F.2d 624, 627 (7th Cir. 1990)).

## ARGUMENT

A claim under the federal FCA requires the plaintiff to allege "(1) that the defendant made
a statement in order to receive [or retain] money from the government; (2) that the statement was

false; and (3) that the defendant knew the statement was false."[2] *Thulin v. Shopko Stores Operating Co.*, 771 F.3d 994, 998 (7th Cir. 2014) (quoting *United States ex rel. Yannacopoulos v. Gen. Dynamics*, 652 F.3d 818, 822 (7th Cir. 2011)). The knowingly false statement must have been material to, and have caused, the government's decision to pay. *Id.* The FCA claim cannot proceed without any one of these elements.

The Illinois FCA has the same requirements. *See* 740 Ill. Comp. Stat. 175/4. The analysis under both statutes overlaps such that cases interpreting the federal FCA will generally also be applicable to the Illinois FCA. *United States ex rel. Absher v. Momence Meadows Nursing Ctr., Inc.*, 764 F.3d 699, 704 n.5 (7th Cir. 2014); *State ex rel. Schad, Diamond & Shedden, P.C. v. Nat'l Bus. Furniture, LLC*, 62 N.E.3d 1061, 1070 (Ill. Ct. App. 2016). Relator does not offer distinct allegations for his Illinois FCA claim. *See* Compl. ¶ 13 (statutes are "substantively identical").

Relator's claims under both the federal and Illinois FCA fail because he fails to allege a false statement, materiality, causation, or scienter.

## I. Relator Has Not Sufficiently Alleged A False Statement Made to the Government.

"The *sine qua non* of a False Claims Act violation is the submission of a fraudulent claim." *Mason v. Medline Indus., Inc.*, No. 07 C 5615, 2009 WL 1438096, at *4 (N.D. Ill. May 22, 2009)). Here, Relator does not allege that Molina submitted any claims seeking payment for services that were not provided. Indeed, he does not describe any request for payment in the Complaint. Nor

---

[2] Relator includes not only claims under 31 U.S.C. § 3729(a)(1)(A) and (a)(1)(B) relating to making a false claim and using documents or records to support an undue payment, but also a claim under 31 U.S.C. § 3729(a)(1)(G) for using documents or records to avoid an obligation to pay the government. Apart from a conclusory allegation that tracks the language of the statute, Compl. ¶ 76, the Complaint fails to allege any facts in support of a claim under this "reverse false claims" provision. *United States ex rel. Keen v. Teva Pharm. USA Inc.*, No. 15 C 2309, 2017 WL 36447, at *5 (N.D. Ill. Jan. 4, 2017) (holding there was no obligation to repay government funds until repayment was sought). Even if Relator could allege an obligation to repay the government money, which he cannot, Relator's "reverse false claims" allegations would fail for the same reasons as his other claims. *See, e.g.*, *United States ex rel. Lamers v. City of Green Bay*, 168 F.3d 1013, 1020 (7th Cir. 1999) (applying materiality, causation, and scienter requirements to a reverse false claim in the context of an allegedly false certification of regulatory compliance).

does Relator allege that Molina made any misrepresentations to the government regarding SNFist services—whether in connection with a claim for payment or not. To the contrary, the Complaint quotes deposition transcripts that discuss Molina's audit reports and conference calls with CMS that highlight the *lack* of any specific false representation. *See* Compl. ¶ 52 (describing Molina's chief operating officer, Ben Schoen, as stating that reports to Illinois accurately reported aggregate services provided), ¶ 53 (quoting Molina's director of healthcare, Randy Carey-Walden, as saying "there was never a specific audit of the SNFist program itself"), ¶ 54 (quoting Carey-Walden as saying he did not "know of any specific report that [Molina] had to make monthly to CMS" regarding its SNFist services); *id.* (quoting Carey-Walden as saying that there were monthly calls in which CMS might have asked questions about the SNFist program, but not alleging that any responses to those questions were false). *Gross*, 415 F.3d at 603 (affirming dismissal because the complaint did "not allege to the required degree of particularity the false statement or statements made by the defendants, with knowledge of their falsity, for the purpose of obtaining payment from the government").

Unable to allege an affirmative misrepresentation, Relator appears to argue that Molina expressly or impliedly certified compliance when, in reality, it was not in compliance. Under this theory, express false certification occurs when a claimant explicitly represents compliance with a particular statute, regulation, or contract term, but in fact has not complied, *Absher*, 764 F.3d at 710–11, and implied false certification occurs when "the defendant submits a claim for payment that makes specific representations about the goods or services provided, but knowingly fails to disclose the defendant's noncompliance with a statutory, regulatory, or contractual requirement," and that "omission renders those representations misleading," *Escobar*, 136 S. Ct. at 1995. It is not enough to allege that the defendant violated a regulation or contract provision. *See id.* at 2003

7

(FCA "is not 'an all-purpose antifraud statute,' or a vehicle for punishing garden-variety breaches of contract or regulatory violations" (citation omitted)); *United States ex rel. Grenadyor v. Ukrainian Vill. Pharmacy, Inc.*, 772 F.3d 1102, 1107 (7th Cir. 2014) ("[I]t is not enough to allege, or even prove, that the pharmacy engaged in a practice that violated a federal regulation. Violating a regulation is not synonymous with filing a false claim.").

### A.     Relator Has Not Alleged An Actionable Express Certification.

Relator has failed to identify any false *express* certification by Molina. He alleges that the Department submitted quarterly reports to CMS (Form CMS-37 and Form CMS-64), which include "a certification attesting that the reported data include only allowable expenditures in accordance with applicable federal, state, and local statutes, regulations, policies, and the state plan approved by CMS." Compl. ¶ 64. But even if Relator adequately alleged that there were not "allowable expenditures" and that Molina knew it was not entitled to payment, Relator has not alleged the mechanism by which Molina caused CMS to make this representation, foreclosing liability based on these reports. *Id.* And the certification is too general and the representation about services too vague (in fact, absent) to support an express or implied certification claim. Courts have specifically rejected theories both of express and implied false certification based on the same form and attestation on which Relator relies. *See, e.g.*, *United States ex rel. Tessler v. City of New York*, No. 14-CV-6455 (JMF), 2016 WL 7335654, at *4 (S.D.N.Y. Dec. 16, 2016) (dismissing implied and express false certification FCA claim that was based on attestation in Form CMS-64), *aff'd*, 712 F. App'x 27 (2d Cir. 2017).

Relator also alleges that the Encounter Data Reports, which record Medicaid-covered services reported on a claim to Molina, included a certification "that the data or documents are recorded and complete, accurate, and truthful, and in accordance with all federal and state laws,

regulations, policies, and contracts." Compl. ¶ 63. Relator, however, has not alleged that Molina falsely certified compliance with the particular term of the contracts that provided for the SNFist program. The general statement that the data are "in accordance with all federal and state laws, regulations, policies, and contracts" is insufficient to satisfy the applicable pleading standards. *See United States ex rel. Kietzman v. Bethany Circle of King's Daughters of Madison, Ind., Inc.*, 305 F. Supp. 3d 964, 975 (S.D. Ind. 2018) ("The 'general statement' about certifying compliance with the whole body of applicable federal regulations contained in paragraph 20 of the second amended complaint 'is not sufficient to satisfy Rule 8, let alone Rule 9(b).'" (citation omitted)).

### B. Relator Has Not Alleged An Actionable Implied Certification.

Nor has Relator alleged sufficient facts to support an *implied* false certification theory. In *Universal Health Services, Inc. v. United States ex rel. Escobar*, the Supreme Court defined the scope of an "implied certification" theory—allowing such claims but imposing tough standards on what constitutes a false implied certification and when such certifications are material, *see* Section II, *infra*. Implied false certifications can be a basis for liability if two conditions are met: "first, the claim does not merely request payment, but also makes specific representations about the goods or services provided; and second, the defendant's failure to disclose noncompliance with material statutory, regulatory, or contractual requirements makes those representations misleading half-truths." *Escobar*, 136 S. Ct. at 2001. Implied false certification claims must meet both conditions. *United States v. Sanford-Brown, Ltd.*, 840 F.3d 445, 447 (7th Cir. 2016).

The Complaint satisfies neither prong of this falsity test. Here, Relator has not identified *any* alleged specific representations about the goods or services Molina provided beyond a mere request for payment—much less any specific representations that were rendered "misleading half-truths" because Molina failed to disclose non-compliance with its contracts. *Compare id.*

(concluding that relator failed to establish an implied false certification claim where there was no proof that any representations were made in connection with the claims for payment), *with Escobar*, 136 S. Ct. at 2000 (concluding that billing codes that corresponded to the service and the provider constituted "specific representations about the goods and services provided"). In *United States ex rel. Kietzman v. Bethany Circle of King's Daughters of Madison, Indiana, Inc.*, for example, the relator alleged that the defendant hospital's radiologists would perform, and bill the government for, two diagnostic scans on oncology patients, even though the second scan was "improper and unnecessary." 305 F. Supp. 3d at 975. But the complaint failed to allege that the hospital made specific representations about the scans which were misleading half-truths where there was "no allegation at all that the Hospital *concealed* what it was doing (for example, by use of false or misleading billing codes) from the government." *Id.* at 976.

Here, too, there is no allegation that Molina reported inaccurate quantities of services. *See* Compl. ¶ 52. At most, Relator has alleged that Molina made claims for payment from the government, and separately submitted reports and responded to inquiries, but "'[a] simple demand for payment does not constitute a specific representation about the goods and services provided.'" *United States ex rel. Thornton v. Pfizer Inc.*, No. 16-CV-7142, 2019 WL 1200753, at *6 (N.D. Ill. Mar. 14, 2019) (quoting *United States ex rel. Lisitza v. Par Pharm. Cos.*, 276 F. Supp. 3d 779, 796 (N.D. Ill. 2017)).

## C. Relator's False Statement Allegations Lack Particularity.

Finally, even if Relator had alleged a false representation, which he has not, he fails to allege it with sufficient particularity. The reports and statements underlying Relator's claims are alleged by general category without identifying any specific one that he contends contained a false statement. "When a fraud scheme involves numerous transactions over time, a plaintiff . . . must

plead at least representative examples of the fraud." *Ortho-McNeil Pharm.*, 2007 WL 2091185, at *3; *see also Gross*, 415 F.3d at 604–05 (affirming dismissal when false statements "identified only by a categorical and essentially undecipherable listing of various 'forms, written reports and study results' the defendants are alleged to have filed with the government at some point"); *Thornton*, 2019 WL 1200753, at *6. *United States ex rel. Berkowitz v. Automation Aids, Inc.* affirmed dismissal of FCA claims because, even having alleged how "the defendants defrauded the government by knowingly submitting false statements for payment," the complaint did "not contain the underlying details of the fraud scheme" including "specific facts demonstrating what occurred at the individualized transactional level for each defendant." 896 F.3d at 841.

Relator's failure to identify a specific express or implied false statement or certification prevents Molina from adequately defending against this lawsuit, *see Vicom, Inc. v. Harbridge Merch. Servs.*, 20 F.3d 771, 777 n.4 (7th Cir. 1994) (observing that courts "'construe Rule 9(b) strictly in order to . . . give defendants notice' of the claims asserted" (citation omitted)), and requires dismissal, *Grenadyor*, 772 F.3d at 1105–07; *Tessler*, 2016 WL 7335654, at *4.

## II. Relator Has Not Sufficiently Alleged That Any False Statement Was Material or Caused A Loss To The Government.

Even if Relator had sufficiently identified a false statement, he does not allege facts to support an allegation that any such statement was material or caused a loss to the government.

### A. Relator Has Not Sufficiently Alleged Materiality.

The Complaint also should be dismissed for the independent reason that Relator does not sufficiently allege materiality. Relator conclusorily alleges that the government would have refused to pay Molina anything had it known about the lack of an SNFist program but does not provide supporting factual allegations. *See* Compl. ¶¶ 68, 70. To adequately allege materiality, Relator must identify how payments were affected by the alleged false statement. *See Wisz v.*

*C/HCA Dev., Inc.*, 181 F.R.D. 385, 387 (N.D. Ill. 1998) (dismissing a complaint based on a directive to classify all surgeries as major, which affected reports filed with the government, for failing to explain sufficiently how those classifications affected payment).  Relator fails here, where there is no allegation that CMS or the Department have complained or withheld payment based on the lack of a SNFist program, asked any MCO to return funds or sought return of Medicaid funds in any circumstance analogous to Relator's allegations in this case, or otherwise withheld funding from MCOs based on a lack of exact contract compliance.[3]

To the extent Relator relies on an implied false certification theory, an even more "rigorous" and "demanding" materiality standard applies.  *See Escobar*, 136 S. Ct. at 2002–03. Relator's materiality allegations rely on the proposition that any contract noncompliance is material as to all payments.  *See, e.g.*, Compl. ¶ 68 ("The Department has the authority to terminate Molina's contract if the Department determines that Molina failed to '[c]arry out the substantive terms of its contract.'").  Under *Escobar*, a "misrepresentation cannot be deemed material merely because the Government designates compliance with a particular statutory, regulatory or contractual requirement as a condition of payment.  Nor is it sufficient for a finding of materiality that the Government would have the option to decline to pay if it knew of the defendant's noncompliance."  136 S. Ct. at 2003; *see Sanford-Brown*, 840 F.3d at 447–48.

---

[3] To the extent Relator's claims are based on Molina allegedly failing to notify the Department that it had changed providers, Relator does not allege that it would have been material for the government to know of such a change.  *See* Compl.¶ 66 (alleging a requirement to notify the Department if Molina changed "key functions for the delivery of care," or its "network of Affiliated Providers").  Relator acknowledges SNFist services can be provided through direct employment or a sub-contractual relationship.  Compl. ¶¶ 34–35. And the fraud report allegations fail for the same reasons as Relator's other false certification allegations. *See United States ex rel. Upton v. Family Health Network, Inc.*, No. 09 C 6022, 2013 WL 791441, at *6 (N.D. Ill. Mar. 4, 2013) (analyzing fraud report as a false certification).  Having not sufficiently alleged fraud or materiality, Relator has not sufficiently alleged a material omission.

Instead, the "complaint must present concrete allegations from which the court may draw the reasonable inference that the misrepresentations . . . caused the Government to make the reimbursement decision." *Coyne v. Amgen, Inc.*, 717 F. App'x 26, 29 (2d Cir. 2017). Where, as here, the relator fails to allege the "types of claims the government usually did or did not pay," what the government's compliance priorities were," "the degree of severity of the [defendant's] alleged breaches," or that the government would "usually refuse to pay claims for treatment," the complaint should be dismissed for failure to adequately allege materiality. *Kietzman*, 305 F. Supp. 3d at 977; *cf. United States v. Luce*, 873 F.3d 999, 1007 (7th Cir. 2017) (materiality satisfied where government instituted debarment proceedings to end defendant's participation in the government program and thus "did not simply refuse payment in one instance, but terminated its relationship with the [defendant] so that no future payments could be made").

### B.    Relator Has Not Sufficiently Alleged Causation.

The Complaint also does not satisfy the causation requirement for the § 3729(a)(1)(B) claim. To support FCA liability for submitting a false statement or record in support of payment, the defendant's representation must have been a proximate cause of payment. *See Luce*, 873 F.3d at 1014. Relator does not tie payments to Molina to any false statement, absent which the government would not have paid Molina. His own allegations suggest that quarterly audits of contract compliance by the Department and calls with CMS in which Molina was asked about its SNFist program did not cause the government to stop payment, even though there is no allegation that Molina misrepresented the status of its SNFist program. Compl. ¶¶ 53–54.

### III.    Relator Has Not Sufficiently Alleged That Molina Knowingly Made Any False Statement To Receive Payments It Was Not Owed.

To satisfy the scienter requirement, Relator must allege that Molina "'acted with "actual knowledge," or with "deliberate ignorance" or "reckless disregard" to the possibility that the

submitted claim was false.'" *United States ex rel. Sheet Metal Workers Int'l Ass'n, Local Union 20 v. Horning Invs., LLC*, 828 F.3d 587, 593 (7th Cir. 2016) (citations omitted). *Escobar* stressed the relation of scienter to the materiality standard, holding that a relator must sufficiently allege "the defendant knowingly violated a requirement *that the defendant knows is material* to the Government's payment decision." *Escobar*, 136 S. Ct. at 1996 (emphasis added).

Relator fails to meet this demanding standard. Apart from a conclusory allegation that Molina concealed the lack of an SNFist program to "keep the funding spigot open," Compl. ¶ 69, Relator has not alleged how Molina knowingly violated the SNFist requirement or knew the requirement was material to payment. *Gross*, 415 F.3d at 604 (affirming dismissal based on the relator's failure to sufficiently allege that "a fraudulent statement's purpose" was "to coax a payment of money from the government"). To the contrary, the Complaint alleges that Molina "contemplated beginning an in-house SNFist program" and in fact did have in-house staff complete some FCNAs to that end. Compl. ¶ 49.

Moreover, while the Complaint alleges that the contracts define an "SNFist," it does not include any clear definitions of SNFist services or SNFist program and cites to multiple interpretations of the contractual requirement. *See* Compl. Ex. 1 (Schoen Dep.) at 16, 30–31. A statement cannot be "false"—much less knowingly false—if the contractual requirements are ambiguous. *See Escobar*, 136 S. Ct. at 2003–04. While the Complaint alleges that General Medicine satisfied the SNFist requirement, it does not allege with particularity what else was required absent General Medicine's involvement. Compl. ¶ 41; *Sheet Metal Workers*, 828 F.3d at 594 (concluding that scienter requirement was not met where there was ambiguity about the underlying act's requirements).

Relator's factual scienter allegations are consistent with—at most—negligence that would not constitute an FCA violation. *See, e.g.*, *Sheet Metal Workers*, 828 F.3d at 593 ("[T]he reckless disregard required to show the necessary knowledge is an extension of gross negligence. . . . Innocent mistakes or negligence are not actionable." (citations and quotation marks omitted)). Absent sufficient allegations of knowledge, Relator's claims must be dismissed.

## IV. Molina Healthcare, Inc. Should Be Dismissed As A Defendant Because Relator Has Not Made Sufficient Allegations Against It.

The claims against Molina Healthcare should be dismissed for the independent reason that the bare bones Complaint lacks specific allegations about its involvement. In a single paragraph, Relator alleges Molina Healthcare (1) reviewed reports from and (2) imposed a "profit motive" on Molina. Compl. ¶ 58. These allegations do not make Molina Healthcare a proximate cause of any undue payment. *See Luce*, 873 F.3d at 1014. Rule 9(b) requires more. *See Vicom*, 20 F.3d at 778 ("'[T]he complaint should inform each defendant of the nature of his alleged participation in the fraud.'" (citation omitted)). Even if Relator sufficiently pled Molina Healthcare's knowledge of false statements, "[k]nowledge is a necessary but insufficient basis for liability." *United States ex rel. Lisitza v. Par Pharm. Cos.*, No. 06 C 06131, 2013 WL 870623, at *4 (N.D. Ill. Mar. 7, 2013). Courts have dismissed claims against co-defendants where, as here, alleged liability is premised on a nebulous scheme. *See, e.g.*, *Ortho-McNeil Pharm.*, 2007 WL 2091185, at *5 (dismissing claim against parent corporation when the plaintiff had not pled facts to support a direct claim or veil-piercing); *see also United States ex rel. Ruckh v. Salus Rehab., LLC*, 304 F. Supp. 3d 1258, 1269 (M.D. Fla. 2018) (reversing verdict against defendants alleged to have imposed a "corporate scheme" to maximize corporate profits, "caus[ing]" nursing facilities to submit false claims).

## CONCLUSION

Defendants respectfully request that the Court dismiss the Complaint.

Dated: April 1, 2019

Respectfully submitted,

*/s/ Quyen L. Ta*

Quyen Ta (*pro hac vice*)
Kelly Perigoe (*pro hac vice*)
Alexander J. Holtzman (*pro hac vice*)
BOIES SCHILLER FLEXNER LLP
1999 Harrison St., Suite 900
Oakland, CA 94612
P: (510) 874-1000; F: (510) 874-1460
qta@bsfllp.com

Sulema Medrano
SMITHAMUNDSEN LLC
150 North Michigan Ave., Suite 3300
Chicago, IL 60601
P: (312) 894-3244; F: (312) 997-1722
smedrano@salawus.com

*Attorneys for Defendants Molina Healthcare of Illinois, Inc. and Molina Healthcare, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on April 1, 2019, I electronically filed foregoing Defendants Molina

Healthcare of Illinois, Inc. and Molina Healthcare, Inc.'s Motion to Dismiss with the Clerk of the

Court using the CM/ECF system, which will send notification of such filing to the attorneys listed

below:

**David J. Chizewer**
**Matthew K. Organ**
**William C. Meyers**
GOLDBERG KOHN LTD.
Mid-Continental Plaza
55 East Monroe Street, Suite 3300
Chicago, IL 60603
Phone: (312) 201-4000
Email: david.chizewer@goldbergkohn.com
        matthew.organ@goldbergkohn.com
        wcm@goldbergkohn.com

**AUSA - Chicago**
United States Attorney's Office (NDIL - Chicago)
219 South Dearborn Street
Chicago, IL 60604
Email: USAILN.ECFAUSA@usdoj.gov

*/s/ Quyen L. Ta*