IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, and THE STATE OF ILLINOIS *ex rel.* DR. THOMAS PROSE,<br><br>*Plaintiffs,*<br><br>v.<br><br>MOLINA HEALTHCARE OF ILLINOIS, INC. and MOLINA HEALTHCARE, INC.,<br><br>*Defendants.* | No. 17 C 6638<br><br>Judge Virginia M. Kendall |

## MEMORANDUM OPINION AND ORDER

Plaintiff Thomas Prose ("Relator") filed this *qui tam* lawsuit on behalf of the United States against Defendants Molina Healthcare of Illinois, Inc. ("MHIL") and Molina Healthcare, Inc. ("MHC"). (Dkt. 1). Relator's two-count Complaint alleges that MHIL and MHC violated the False Claims Act ("FCA") (31 U.S.C. § 3729) and Illinois False Claims Act ("ILFCA") (740 ILCS 175/1, *et seq.*) by knowingly submitting claims for payment of services it did not provide. Both the United States and the State of Illinois declined to intervene in Relator's lawsuit. (Dkt. 9). MHIL and MHC moved to dismiss under Federal Rules of Civil Procedure 8(a), 9(b), and 12(b)(6). (Dkt. 29). Because Relator has failed to plead his FCA and ILFCA claims with the required particularity, Defendants' Motion to Dismiss is granted.

## BACKGROUND

All of the Complaint's well-pleaded facts are taken as true and any reasonable inferences are drawn in Relator's favor. *Hecker v. Deere & Co.*, 556 F.3d 575, 580 (7th Cir. 2009).

Relator is a medical doctor that owns General Medicine P.C. ("GM") which provides specialized care for Medicaid recipients living in Skilled Nursing Facilities ("SNF"). (Dkt. 1, ¶ 22). GM employs "board-certified physicians and advanced nurse practitioners" ("SNFist") to work in SNFs. (*Id.* at ¶ 23). MHIL is a managed care organization ("MCO") that has previously contracted with the Illinois Department of Healthcare and Family Services ("IDHFS") and the United States Department of Health and Human Services for Medicare and Medicaid Services to administer healthcare services to Illinois Medicaid recipients. (*Id.* at ¶ 2). MHIL is a subsidiary of MHC, a "multi-state healthcare organization." (*Id.* at ¶ 29). Finally, the Center for Medicare and Medicaid Services ("CMS") is the federal agency that manages Medicaid nationwide. (*Id.* at ¶ 51).

In April 2014, MHIL entered into a risk contract with IDHFS for capitated payments on a monthly "per-member" basis. (*Id.* at ¶ 61). As part of that risk contract, MHIL was required to provide IDHFS with Encounter Data Reports ("EDRs") that outlined Medicaid covered services on both in-patient and out-patient claims. (*Id.* at ¶ 62). The EDRs also included an attestation that the reported data was accurate, truthful and in accordance with applicable laws and contracts. (*Id.* at ¶ 63).

Further, the contract required MHIL to submit a quarterly report to CMS on "estimated costs, including MCO services and a quarterly expenditure report." (*Id.* at ¶ 64). To fulfill the risk contract, MHIL subcontracted with GM to render SNFist services on behalf of MHIL. (*Id.* at ¶ 2). MHIL later breached its contract with GM when it stopped paying GM after January 2015. (*Id.* at ¶ 42). Specifically, MHIL breached the contract in order to "eliminate the immediate, short-term costs associated with the program." (*Id.* at ¶ 43). GM continued providing unpaid SNFist services until April 2015. (*Id.* at ¶ 42).

The parties resolved the breach of contract dispute through an arbitration process and Relator was accordingly compensated. (Dkt. 43, ¶ 6). However, during the arbitration process, Relator learned from deposition testimony that MHIL did not provide SNFist services in Illinois for at least two years. (Dkt. 1, ¶ 3). Nonetheless, during those two years, MHIL still received government payments. (Dkt. 1, ¶ 2). MHIL's contract with IDHFS required MHIL to continually provide SNFist services and to disclose any changes in contracted providers to the federal government. (*Id.* at ¶¶ 35-36). Relator brought this lawsuit, on behalf of the federal and state government, to recover the government's payments to MHIL. (Dkt. 29, ¶ 2).

## **LEGAL STANDARD**

To state a claim upon which relief can be granted, a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "Detailed factual allegations" are not required, but the plaintiff must allege facts that, when "accepted as true ... 'state a claim to relief that is

plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555 (2007)). In analyzing whether a complaint has met this standard, the "reviewing court [must] draw on its judicial experience and common sense." *Iqbal,* 556 U.S. at 679. Where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has not shown that the plaintiff is entitled to relief. (*Id.*).

The FCA, as an anti-fraud statute, is subject to the heightened pleading requirements of Rule 9(b) of the Federal Rules of Civil Procedure. *United States ex rel. Presser v. Acacia Mental Health Clinic, LLC*, 836 F.3d 770, 775 (7th Cir. 2016). Complaints sounding in fraud have an elevated pleading standard: "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). To meet the particularity standard, a plaintiff must assert in their complaint the "who, what, when, where, and how" of the alleged fraud. *United States ex rel. Lusby v. Rolls-Royce Corp.*, 570 F.3d 849, 853 (7th Cir. 2009). Plaintiffs need to "use some … means of injecting precision and some measure of substantiation into their allegations of fraud." *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. Walgreen Co.*, 631 F.3d 436, 442 (7th Cir. 2011); s*ee also U.S. ex rel. Grenadyor v. Ukrainian Vill. Pharmacy, Inc.*, 772 F.3d 1102, 1106 (7th Cir. 2014) (The complaint must demonstrate the "...[T]ime, place, and content of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff.").

Private individuals, as "relators" are allowed to prosecute *qui tam* actions on behalf of the United States government for fraud. 31 U.S.C. § 3730; *see State Farm Fire & Cas. Co. v. United States ex rel. Rigsby*, 137 S.Ct. 436, 440, (2016). A Relator who successfully prosecutes a *qui tam* action is entitled to receive a portion of the recovery. 31 U.S.C. § 3730(d)(1)-(2); *see United States ex rel. Conner v. Mahajan*, 877 F.3d 264, 267 (7th Cir. 2017).

## **DISCUSSION**

To sufficiently demonstrate liability under the FCA, a Relator must establish that (1) the defendant made a statement or submitted a claim in order to receive money from the government; (2) the statement or claim was false; and (3) the defendant knew it was false. 31 U.S.C. § 3729(a). However, Rule 9(b)'s requirement does not require a plaintiff to produce actual copies of the allegedly fraudulent documents or statements. *Leveski v. ITT Educ. Servs.*, 719 F.3d 818, 839 (7th Cir. 2013). Since the IFCA mirrors the FCA, the same standard applies in analyzing both Counts I and II. *Grenadyor*, 772 F.3d at 1109; *see* also *United States ex rel. Absher v. Momence Meadows Nursing Ctr., Inc.,* 764 F.3d 699, 704 (7th Cir. 2014).

Here, Relator fails to sufficiently plead his false claims counts with particularity pursuant to Rule 9(b). *See Borsellino v. Goldman Sachs Grp., Inc.*, 477 F.3d 502, 507 (7th Cir. 2007). Relator asserts that MHIL and MHC knowingly violated the FCA by not providing a SNFist program and failing to report it to IDHFS or CMS. (Dkt. 1, ¶ 74). However, a mere violation of a regulation is not sufficient to give rise to a false claim. *Grenadyor*, 772 F.3d at 1107. Relator points to arbitration deposition

testimony from GM's contract dispute as evidence of FCA liability. (Dkt. 1, ¶ 3). The testimony, however is void of any specific falsified claim, and more significantly, Relator fails to clearly point to any falsified claim in his Complaint. Relator instead tries to cast all submitted reports as false claims, but it remains indiscernible *how* and *whether* any fraud occurred. *See Pirelli*, 631 F.3d at 443.

Even if Relator's Complaint had sufficient particularity, it would separately fail the FCA's materiality requirement. The FCA defines material as "having a natural tendency to influence, or be capable of influencing, the payment or receipt of money or property." 31 U.S.C. § 3729(b)(4). The heightened materiality threshold means that a misrepresentation is not deemed material simply because the Government requires compliance with statutory, regulatory, or contractual requirements as a condition of payment. *Universal Health Servs., Inc v. U.S. ex rel. Escobar*, 136 S. Ct., 1989, 2003 (2016). Here, Relator presents conclusory allegations that the government would have ceased payments if it knew that MHIL did not provide SNFist services. *Escobar* explicitly rejected this line of argument because it would create an impermissibly broad scope to FCA liability. *Escobar*, 136 S. Ct. at 2004. ("Likewise, if the Government required contractors to aver their compliance with the entire U. S. Code and Code of Federal Regulations, then under this view, failing to mention noncompliance with any of those requirements would always be material."). Because Relator fails to describe how MHIL knowingly violated the FCA by omitting information, Relator fails to meet the prescribed materiality standard.

**Implied and Express False Certification Theories**

Relator's Complaint neglects to assert that MHIL either expressly or impliedly submitted false certifications. However, plaintiffs are permitted to elaborate upon their Complaint in their brief opposing dismissal so long as the new arguments are "consistent with the pleadings," which Relator attempts to do here. *Heng v. Heavner, Beyers & Mihlar, LLC,* 849 F.3d 348, 354 (7th Cir. 2017). A false implied certification can violate the FCA if two conditions are met: "[F]irst, the claim does not merely request payment, but also makes specific representations about the goods or services provided; and second, the defendant's failure to disclose noncompliance with material statutory, regulatory, or contractual requirements makes those statements misleading half-truths." *Escobar,* 136 S. Ct. at 2001.

In his response brief, Relator first argues that MHIL was mandated to distinguish between "exams conducted on members residing in their own homes versus those residing in SNFs." (Dkt. 43, ¶ 6). However, Relator fails to specifically allege *how* and *whether* MHIL intentionally omitted information. *Grenadyor*, 772 F.3d at 1106 ("The theory treats a bill submitted to the government as an implicit assurance that the bill is a lawful claim for payment, an assurance that's false if the firm submitting the bill knows that it's not entitled to payment."). Relator did not specifically identify how distinguishing exams would constitute a half-truth, much less a false statement. To the contrary, there is no evidence in the record that MHIL unlawfully reported a false number of exams. Relator's second false certification argument centers around MHIL's monthly calls with CMS. This likewise falls short of the *Escobar*

standard because Relator fails to plead additional facts that would indicate any FCA violations.

Relator's express certification theory fails for the same reason — failure to plead with sufficient particularity. To successfully assert an express false certification theory, a relator must demonstrate that (1) the defendant made a statement or submitted a claim in order to receive money from the government; (2) the statement or claim was false; and (3) the defendant knew it was false. 31 U.S.C. § 3729(a). Relator argues that MHIL knew the EDRs contained attestations of required compliance with applicable laws and the contract terms. (Dkt. 1, ¶ 63). However, Relator fails to point to a specific record or submission made to the government with particularity, much less that the challenged submission contained a materially false statement. *See U.S. ex rel. Absher*, 764 F.3d at 713 ("Nevertheless, the relators' case premised on the MDS forms still fails because of a fatal lack of evidence. The relators did not offer any evidence regarding how many, even roughly, of the MDS forms contained false certifications."). To the extent that Relator pursued his FCA violations under theories of implied false certification and express false certification, those claims cannot proceed on such grounds. Accordingly, Count I and Count II are dismissed without prejudice.

## **CONCLUSION**

For the reasons stated above, Defendants' Motion to Dismiss is granted as Relator has failed to sufficiently plead his FCA claims in compliance with the height-

ened particularity and materiality standards. Relator's Complaint is dismissed without prejudice. Should Relator believe he can address the shortcomings of his Complaint outlined within, he is given leave to file an amended complaint within 21 days of the entry of this Opinion.

_____
Virginia M. Kendall
United States District Judge

Date: July 31, 2019