## CONFIDENTIAL SETTLEMENT AGREEMENT

This Confidential Settlement Agreement ("Agreement") is entered into October 22, 2024, by and between Relator Dr. Thomas Prose ("Relator") and Defendants Molina Healthcare, Inc. and Molina Healthcare of Illinois, Inc. (collectively, "Molina"), through their authorized representatives. Relator and Molina are collectively referred to herein as the "Parties."

## RECITALS

A. Molina Healthcare of Illinois, Inc. is a Managed Care Organization ("MCO") that provides certain healthcare services, including to Medicaid and dual eligible Medicare-Medicaid beneficiaries in Illinois.

B. Molina Healthcare, Inc., the parent of Molina Healthcare of Illinois, Inc., is a publicly traded corporation that provides managed healthcare services under the Medicaid and Medicare programs and through state insurance marketplaces.

C. Since 2013, Molina has contracted with the United States Department of Health and Human Services Centers for Medicare and Medicaid Services ("CMS") and the Illinois Department of Healthcare and Family Services (the "Department") for the provision of certain healthcare services to Illinois beneficiaries under the Medicare-Medicaid Alignment Initiative ("MMAI"). At various times since 2013, the operative version of Molina's MMAI contract required Molina, *inter alia*, to "provide SNFist services either through direct employment or a sub-contractual relationship. The SNFist program shall provide intensive clinical management of Enrollees in Nursing Facilities." "SNFist" was defined in those contracts as "[a] physician or APN licensed under the Illinois Nurse Practice Act who is part of an organized system of care, meaning a coordinated group working together, whose entire professional focus is the general medical care of individuals residing in a Nursing Facility and whose activities include Enrollee care oversight, communication with families, significant others, PCPs, and Nursing Facility Administration."

EXHIBIT 1

D. Since 2011, Molina has contracted with the Department for provision of certain healthcare services to Illinois beneficiaries of Medicaid. At various times since 2013, the operative versions of Molina's Medicaid contracts required Molina, *inter alia*, to "provide SNFist services, either through direct employment or a sub-contractual relationship. The SNFist program shall provide intensive clinical management of Enrollees in Nursing Facilities." "SNFist" was defined in those contracts as "a Physician or APN licensed under the Illinois Nurse Practice Act who is part of an organized system of care, meaning a coordinated group working together, whose entire professional focus is the general medical care of individuals residing in a Nursing Facility and whose activities include Enrollee care oversight, communication with families, significant others, PCPs, and Nursing Facility Administration."

E. The MMAI and Medicaid contracts referred to in Recitals C and D are collectively referred to as the "Government Contracts."

F. On September 14, 2017, Relator filed an action against Molina in the United States District Court for the Northern District of Illinois captioned *The United States of America, and the State of Illinois ex rel. Dr. Thomas Prose v. Molina Healthcare of Illinois, Inc. and Molina Healthcare, Inc.*, Case No. 1:17-cv-06638, pursuant to the *qui tam* provisions of the False Claims Act ("FCA"), 31 U.S.C. § 3729, *et seq.* and the Illinois False Claims Act ("IFCA"), 740 ILCS 175/1, *et seq.* (the "Civil Action").

G. Relator alleges in the Complaint and First Amended Complaint in the Civil Action that, as of April 2, 2015, and continuing through present, Molina failed to provide SNFist services and a SNFist program as required by the Government Contracts. Relator's allegations include, but are not limited to, allegations that Molina failed to hire, contract with, or employ SNFists and/or other qualified individuals to conduct SNFist services and/or SNFist programs; failed to hire, contract with, or employ SNFists and/or other qualified individuals to provide services listed in

the Scope of Work recital in Molina's Provider Services Agreement ("PSA") with General Medicine, P.C. after termination of the aforementioned PSA; failed to provide "medically necessary" services and/or "specialist oversight" to beneficiaries of the Government Contracts residing in skilled nursing facilities; inaccurately represented to the Government, through contract renewals, Request for Proposal ("RFP") responses, and mandatory periodic reporting (such as Readiness Reviews and Quality Assurance Plans), that Molina was providing or could provide required SNFist services and/or SNFist programs; submitted, caused to be submitted, and/or made or used false records and statements related to the provision of required SNFist services and/or SNFist programs; submitted false and misleading Encounter Data Reports that did not reveal Molina was failing to provide required SNFist services and/or SNFist programs; failed to have required quality management/improvement and Utilization Management practices and resources; lacked or purposefully bypassed required measures for reporting fraud-and-abuse and program integrity; failed to employ a compliance officer that conducted the duties required of same; failed to provide documentation to the Government regarding changes to Molina's covered services in relation to required SNFist services and/or SNFist programs; directed unqualified individuals to conduct medical assessments on members residing in Nursing Facilities; submitted requests for payment in summary form to conceal the lack of required SNFist services and/or SNFist programs; was aware of each of these alleged deficiencies but knowingly failed to report them to and/or actively concealed them from the Government; and collected capitation payments from the Government notwithstanding these alleged deficiencies. Based on the foregoing, Relator claims that Molina knowingly presented or caused to be presented false or fraudulent claims for payment in violation of 31 U.S.C. § 3729(a)(1)(A) and 740 ILCS 175/3(a)(1)(A); knowingly made, used, and/or caused to be made and used false records and statements to obtain such payments in violation of 31 U.S.C. § 3729(a)(1)(B) and 740 ILCS 175/3(a)(1)(B); and knowingly made, used,

or caused to be made and used false records and statements to conceal and/or avoid obligations to pay the Government in violation of 31 U.S.C. § 3729(a)(1)(G) and 740 ILCS 175/3(a)(1)(G). The aforementioned alleged conduct is referred to as the "Covered Conduct."

   H. Relator initially filed his complaint in the Civil Action under seal to allow the United States of America and/or the State of Illinois to intervene. On November 19, 2018, the District Court of the Northern District of Illinois entered an Order stating that the "United States of America and the State of Illinois have declined to intervene in this action pursuant to the False Claims Act, 31 U.S.C. § 3730(b)(2)(A) and the State of Illinois' respective False Claims Act" and ordered the complaint to be unsealed.

   I. Relator is, or has been, represented in the Civil Action by Howard Law LLC, Siprut PC, Goldberg Kohn Ltd., Clark Hill PLC, Motley Rice LLC, Funkhouser Vegosen Liebman & Dunn Ltd, DiCello Levitt LLP, Goldstein & Russell, P.C., and King & Jones (collectively, "Relator's Counsel"). Relator claims entitlement under 31 U.S.C. § 3730(d) and 740 ILCS 175/4(d)(1) to a share of the proceeds of this Agreement and to Relator's reasonable expenses, attorneys' fees, and costs.

   J. Molina denies Relator's allegations and claims asserted in this Civil Action, including but not limited to all Covered Conduct.

   K. This Agreement is neither an admission of any allegations or liability by Molina nor a concession by Relator that his claims are not well founded.

   L. To avoid the delay, uncertainty, inconvenience, and expense of protracted litigation of the above claims, and in consideration of the mutual promises and obligations of this Agreement, the Parties agree and covenant as follows:

**TERMS AND CONDITIONS**

1.  Molina shall pay to the United States of America and the State of Illinois, collectively, the sum of one million two hundred thousand dollars ($1,200,000) (the "Settlement Amount"). Payment of the Settlement Amount shall occur no later than the forty-fifth (45th) day after the Effective Date of this Agreement and receipt of signed written instructions for electronic funds transfer to be provided by the United States Attorney's Office for the Northern District of Illinois. The United States will make disbursements to the State of Illinois.

2.  Relator represents that he has entered into a separate Relator's Share Agreement with the United States and the State of Illinois pursuant to which, after the United States receives the Settlement Amount, Relator will receive $324,000, representing 27% share of the full $1,200,000 Settlement Amount, including any amount deemed to be restitution, pursuant to 31 U.S.C. § 3730(d) and 740 ILCS 175/4(d)(1). Relator shall be solely responsible for any and all tax or related liabilities and costs that he may incur as a result of receiving his share of the Settlement Amount.

3.  Molina shall pay eight hundred thousand dollars ($800,000) (the "Fee Amount") to resolve and settle any and all claims related to attorneys' fees, costs, and expenses, either already incurred or that may be incurred in the future in connection with the Civil Action or Covered Conduct and that Relator or Relator's Counsel have or may have under 31 U.S.C. § 3730(d)(2) and 740 ILCS 175/4(d)(1); under any comparable statute; under any other law, regulation, or agreement; or at common law. Consistent with this Paragraph, Molina will make a payment of the Fee Amount to Clark Hill PLC by wire transfer in accordance with signed instructions provided by Clark Hill within forty-five (45) days of the Effective Date of this Agreement and receipt of the signed wire instructions. Clark Hill shall be responsible for distributing the Fee Amount to

Relator's Counsel. Relator's Counsel shall be solely responsible for any and all tax or related liabilities and costs that they may incur as a result of receiving the Fee Amount.

4. Molina's obligation to pay the Settlement Amount and the Fee Amount is contingent upon the United States and the State of Illinois agreeing to a dismissal of the entirety of the Civil Action pursuant to 31 U.S.C. § 3730(b)(1) and 740 ILCS 175/4(b)(1); the government shall agree to dismiss and release its claims in the Civil Action against Molina arising between April 1, 2015 and December 31, 2017, with prejudice, and otherwise will agree to dismiss and release its claims in the Civil Action against Molina without prejudice.

5. Upon the United States' receipt of the Settlement Amount and Relator's Counsel's receipt of the Fee Amount, Relator, for himself and for his current and former heirs, successors, attorneys, agents, and assigns, including but not limited to General Medicine, P.C. and all corporate affiliates of the same, releases Molina together with its current and former parent corporations; direct and indirect subsidiaries; brother or sister corporations; divisions; affiliate entities; owners, officers, directors, employees, agents, shareholders, and attorneys; and the heirs, representatives, successors, and assigns of any of them, from (a) any civil monetary claim Relator has or could have had, whether known or unknown, on behalf of the United States or the State of Illinois for the Covered Conduct or Civil Action under the FCA or IFCA; (b) any and all claims, whether in law or in equity, whether known or unknown, that Relator has or may have through the Effective Date of this Agreement; (c) any and all claims Relator has asserted, could have asserted, or may assert in the future against Molina related to the Covered Conduct or the Civil Action, including but not limited to claims arising from the filing or prosecution of the Civil Action, under the FCA, or under the IFCA; and (d) any and all claims to fees and expenses pursuant to 31 U.S.C. § 3730(d)(2) or 740 ILCS 175/4(d)(1) related to the Covered Conduct or Civil Action.

6. Relator and his heirs, successors, attorneys, agents, and assigns agree and confirm that this Agreement is fair, adequate, and reasonable under all the circumstances, pursuant to 31 U.S.C. § 3730(c)(2)(B) and 740 ILCS 175/4(c)(2)(B).

7. Conditioned upon Relator's receipt of payment of his portion of the Settlement Fee described in Paragraphs 1 and 2, Relator and his heirs, successors, attorneys, agents, and assigns fully and finally release, waive, and forever discharge the United States and the State of Illinois, their agencies, officers, agents, employees, and servants, from any claims arising from the filing of this litigation or under 31 U.S.C. § 3730 or 740 ILCS 175/4 and from any claims to a share of the proceeds of this Agreement and/or the Civil Action.

8. Molina fully and finally releases the United States and the State of Illinois, and their agencies, officers, agents, employees, and servants, from any claims (including attorneys' fees, costs, and expenses of every kind and however denominated) that Molina has asserted, could have asserted, or may assert in the future against the United States and the State of Illinois, their agencies, officers, agents, employees, and servants, related to the Covered Conduct or the United States' or State of Illinois' investigation and prosecution thereof.

9. Molina together with its current and former parent corporations; direct and indirect subsidiaries; brother or sister corporations; divisions; affiliate entities; owners, officers, directors, employees, agents, shareholders, and attorneys; and the heirs, representatives, successors, and assigns of any of them fully and finally releases Relator, his current and former heirs, successors, attorneys, agents, and assigns, including but not limited to General Medicine, P.C. and all corporate affiliates of the same from any and all claims, whether in law or in equity, whether known or unknown (including attorneys' fees, costs, and expenses of every kind and however denominated) that Molina has or may have through the Effective Date of this Agreement, including any and all claims Molina has asserted, could have asserted, or may assert in the future against

Relator related to any of the claims in Relator's Complaint or First Amended Complaint in the Civil Action and Relator's investigation and prosecution thereof.

10. The Settlement Amount shall not be decreased as a result of the denial of claims for payment now being withheld from payment by any Medicare contractor (*e.g.*, Medicare Administrative Contractor, fiscal intermediary, or carrier) or any state payer, including Medicaid, related to the Covered Conduct; and Molina agrees not to resubmit to Medicare or any state payer any previously denied claims related to the Covered Conduct, agrees not to appeal any such denials of claims, and agrees to withdraw any such pending appeals.

11. Each Party shall bear its own legal and other costs incurred in connection with this matter, including the preparation and performance of this Agreement, with the exception that Molina shall pay the Fee Amount set forth in Paragraph 3 above.

12. This Agreement is intended to be for the benefit of the Parties, the United States, and the State of Illinois only. The Parties do not release any claims against any other person or entity, except to the extent provided for in Paragraphs 5 and 7-9.

13. Within ten (10) days following Molina's payment of the Settlement Amount and the Fee Amount, Relator will obtain the consent of the United States and the State of Illinois to the dismissal of the Civil Action with prejudice as to Relator. The consent of the United States and the State of Illinois shall be reflected in the joint stipulation dismissing with prejudice as to Relator all claims and counterclaims pleaded in the Civil Action described in Paragraph 14 and shall be consistent with the release described in Paragraph 4.

14. Within ten (10) days following Molina's payment of the Settlement Amount and the Fee Amount, Relator and Molina will file with the Court a joint stipulation of dismissal of the Civil Action with prejudice as to Relator, which will specify that the dismissal applies to any claim by Relator to reasonable fees and costs under 31 U.S.C. § 3730(d)(2) and/or 740 ILCS 175/4(d)(1),

and that the United States and the State of Illinois consent to dismissal of the Civil Action with prejudice as to Relator.

15. Each party and signatory to this Agreement represents that it freely and voluntarily enters into this Agreement without any degree of duress or compulsion.

16. Should any term or provision of this Agreement be declared illegal, invalid or unenforceable, and if such provision cannot be modified to be enforceable, then such provision shall immediately become null and void, leaving the remainder of this Agreement in full force and effect. The language of all parts of this Agreement shall in all cases be construed as a whole, according to its fair meaning, and not strictly for or against either of the Parties.

17. This Agreement is governed by the laws of the United States. The exclusive jurisdiction and venue for any dispute relating to this Agreement is the United States District Court for the Northern District of Illinois. For purposes of construing this Agreement, this Agreement shall be deemed to have been drafted by all Parties to this Agreement and shall not, therefore, be construed against any Party for that reason in any subsequent dispute.

18. This Agreement constitutes the complete agreement between the Parties. This Agreement may not be amended except by written consent of the Parties.

19. The undersigned counsel represent and warrant that they are fully authorized to execute this Agreement on behalf of the persons and entities indicated below.

20. This Agreement may be executed in counterparts, each of which constitutes an original and all of which constitute one and the same Agreement.

21. This Agreement is binding on Molina's successors, transferees, heirs, and assigns.

22. This Agreement is binding on Relator's successors, transferees, heirs, and assigns.

23. This Agreement is effective on the date of signature of the last signatory to the Agreement (Effective Date of this Agreement). Facsimiles and electronic transmissions of signatures shall constitute acceptable, binding signatures for purposes of this Agreement.

**Molina Healthcare, Inc.**

DATED: 10/16/24    BY: *Eric Alderete*
Eric Alderete
Senior Vice President and Deputy General Counsel
Molina Healthcare, Inc.

DATED: 10/21/24    BY: *Quyen Ta*
Quyen L. Ta
Skadden, Arps, Slate, Meagher & Flom LLP
Outside Counsel for Molina Healthcare, Inc.

**Molina Healthcare of Illinois, Inc.**

DATED: 10/16/2024    BY: *Eric Alderete*
Eric Alderete
Senior Vice President and Deputy General Counsel
Molina Healthcare of Illinois, Inc.

DATED: 10/21/24    BY: *Quyen Ta*
Quyen L. Ta
Skadden, Arps, Slate, Meagher & Flom LLP
Outside Counsel for Molina Healthcare of Illinois, Inc.

**Relator Thomas Prose, M.D.**

DATED: 10/22/24    BY: *Thomas Prose*
Thomas Prose, M.D.
Relator

DATED: 10/22/2024    BY: *Neil Rosenbaum*
Neil Rosenbaum
Clark Hill LLP
Counsel for Relator Thomas Prose, M.D.